**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CHERYL JESSEN, | HONORABLE KAREN M. WILLIAMS |
| Plaintiff, | |
| v. | Civil Action<br>No. 23-919 (KMW-EAP) |
| MODEL N, INC., | |
| Defendant. | **OPINION** |

APPEARANCES:

CAREN NANCY GURMANKIN, ESQ.
KATHERINE CHARBONNIER OELTJEN, ESQ.
CONSOLE MATTIACCI LAW, LLC
110 MARTER AVE, SUITE 105
MOORESTOWN, NJ 08057

   *Counsel for Plaintiff Cheryl Jessen.*

ANDERWA MERYL KIRSCHENBAUM, ESQ.
TATIANA WEBB, ESQ.
LITTLER MENDELSON PC
1601 CHERRY STREET, SUITE 1400
PHILADELPHIA, PA 19102

   *Counsel for Defendant Model N, Inc.*

**WILLIAMS, District Judge:**

## I. INTRODUCTION

Plaintiff Cheryl Jessen brings this action against her former employer Defendant Model N, Inc., alleging that the Defendant discriminated against her based on her sex and retaliated against her due to reporting such conduct, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, ("Title VII"), and the New Jersey Law Against Discrimination, N.J. Stat. Ann. §10:5-1, *et seq.*, ("NJLAD") while she worked as a Global Account Director and Regional Sales Director, ("RSD").

This matter comes before the Court on Defendant's Motion for Summary Judgment, (ECF No. 52). Plaintiff opposed the motion, (ECF No. 59), and Defendant replied (ECF No. 65). Plaintiff then filed a sur reply (ECF No. 67). Defendant in turn filed a Motion to Strike (ECF No. 69), to which Plaintiff opposed (ECF No. 78), and Defendant replied (ECF No. 79). For the reasons that follow, Defendant's Motion for Summary Judgment will be **DENIED** and Defendant's Motion to Strike will be **DENIED**.[1]

## II. BACKGROUND

### A. Undisputed Material Facts

Plaintiff began working for Defendant as a Global Account Director, an "individual contributor role," between March 2011 and December 2014, and then returned to Defendant as a Global Account Director in February of 2017, where she reported to the Vice President of Sales–Life Sciences Americas. Defendant's Statement of Undisputed Material Facts, ("SUMF") at ¶¶ 6-7. At this level, Plaintiff did not have any direct reports. *Id.* ¶ 23. In 2018 and 2019, Defendant acquired new C-Suite leadership, with Jason Blessing becoming the CEO in May of 2018 and

---

[1] Pursuant to Local Civil Rule 78.1(b), this motion will be decided on the papers without oral argument.

Chris Lyon ("Lyon") becoming the Chief Revenue Officer ("CRO") and Senior Vice President on April 1, 2019. *Id.* at ¶¶ 9-10. As CRO, Lyon supervises all sales teams. *Id.* at ¶11. In November and December 2019, Brian Mullen ("Mullen"), Kelly Walter, and Karen Zbyszinski ("Zbyszinski"), were hired into Vice President ("VP") positions in different sales teams. *Id.* at ¶¶ 12, 13, 18, 20.

In November 2019, Plaintiff began reporting to Mullen as her supervisor in Strategic Accounts and began having discussions with him about her desire to attain leadership opportunities at the company. *Id.* at ¶¶ 22, 24. In 2020, Lyon wanted to expand the Sales division and increase sales capacity which resulted in Plaintiff being promoted to a RSD role on November 20, 2020, whereby she continued reporting to Mullen, and was now responsible for supervising three subordinates. *Id.* at ¶¶31, 36, 42, 48. During this time Plaintiff closed important deals, but ultimately missed her quota for 2021. *Id.* at ¶¶ 58-60, 62, 66, 89-91. Although her sales team was not able to make their end of year goal, it is undisputed that Plaintiff was a valued member of the organization. *Id.* ¶¶ 37, 39, 92, 93. On February 15, 2022, Plaintiff notified Defendant that she was resigning and ultimately left to take the role of Area Vice President at a different company. *Id.* at ¶¶97-102.

### B. Disputed Material Facts

According to Plaintiff, Lyon was "whispering" to her that she would be promoted to VP prior to Mullen's arrival and was surprised when she was overlooked for other VP positions. Plaintiff's Response to SUMF ("PRSUMF") at ¶¶ 77-79. Lyon had a significant role in promotions and hiring in the Sales division *Id.* at ¶¶ 11, 28; PSAF at ¶¶ 171-72, 268. When Lyon sought to expand the Sales division, Plaintiff believed that she would be promoted to VP, creating a deck she had shared with Mullen showing the division being split into "East" and "West" between them

3

as co-equal VPs. PRSUMF at ¶¶ 51-53, 74; PSAF at ¶¶ 237. Instead, Plaintiff was promoted to an RSD role that included more burdensome assignments, such as supervising individuals who were less experienced, had "HR issues [and] performance issues" and that she had to manage the "filter accounts [] that no one wanted." Plaintiff's Statement of Additional Facts ("PSAF") at ¶¶ 216, 237, 239. Lyon asserts that the decision was made because Plaintiff lacked sufficient "leadership experience," however, Plaintiff contends that she had prior experience as a sales leader and knew the accounts and underlying business better than Mullen. SUMF at ¶¶ 34-35; PRSUMF at ¶¶ 25-26; PSAF at ¶¶ 170-80.

Soon after becoming RSD Plaintiff began discussing with several Human Resources ("HR") employees that she believed her move to RSD was due to the "old boy's club" environment at the company which required women to demonstrate higher degrees of competency than the men to obtain recognition and advancement within the company.[2] PSAF at ¶¶ 53, 233-35. Plaintiff argues that the more she contacted HR, the more "uncomfortable" her meetings around forecast calls became. *Id.* at ¶ 235. Plaintiff asserts that she was excluded from meetings regarding her accounts, her reviews became a "gauntlet" of critique and questioning, and her pay for a deal was cut soon after she started approaching HR with her complaints. *Id* at ¶¶ 233-35.

Plaintiff contends that she was doing substantively the same work as VPs in the company but was not being paid at the same rates. PSAF at ¶¶ 200-17; PRSUMF at ¶¶ 53-54. Rather, Plaintiff contends that she was paid less for taking on more responsibility when Defendant

---

[2] For example, Plaintiff describes experiencing harsher treatment of women at quarterly business reviews, being excluded from relevant meetings, not being included on the initial roll out of a t-shirt later used as a "reward" for high performers. PSAF at ¶¶ 233-35; PRSUMF at ¶¶ 78-85. In addition, Plaintiff cites to testimony by Angie Yi, an HR representative, who fielded concerns from other women, including Zbyszinski, regarding the "old boys' club" atmosphere at Defendant, including the belief that their advancements were stymied because they were women, inconsistent standards being applied to women employees versus male employees, a Glassdoor review indicating a difficult climate for females or working parents with young children, the acknowledged underrepresentation of women at leadership levels within the company, and the fact that Lyon made disparaging statements against another protected class in the past. PSAF at ¶¶ 46-54; 75, 90, 93, 97, 101-02, 104, 300-304.

4

promoted her to RSD, not only in relation to other VPs but also in relation to individual contributors. *See* PRSUMF at ¶¶ 57, 61; PSAF at ¶ 239. Defendant argues that Plaintiff was paid commensurate with her role as RSD based on the meaningful difference between a VP position and the role of RSD. SUMF at ¶¶ 57, 59, 60-61. It is undisputed that Plaintiff was paid less than Mullen: in 2021 she was paid a base salary of $180,000, with a sales quota of $4,712,500; in 2021 Mullen was paid a base salary of $250,000, with a sales quota of $8,750,000. PRSUMF at ¶¶ 43-44, 46. Plaintiff contends that the quota she was assigned to was designed unfairly. PSAF at ¶ 238-39. The Court notes that Plaintiff's quota "rolled up into" Mullen's quota. PR SUMF at ¶ 46.

Further, Plaintiff asserts that the qualifications required for a promotion to a VP role were not defined until after Plaintiff made her desire for a promotion known, noting that an HR representative and Mullen presented her with a "Tool Kit for people leaders," a year after Plaintiff had assumed her RSD role. PRSUMF at ¶¶ 76-77.[3] During that meeting, Plaintiff compared the listed "competencies" with her performance and Mullen's performance that past year, and noting that both Mullen and her only had "1 RSM make their numbers this year[.]" *Id.*

Lyon asserts that he had planned to promote Plaintiff to VP in the spring of 2022. Defendant's Response to PSAF at ¶¶ 268. However, when HR representatives reached out to Lyon in February of 2022, to determine if the company would offer Plaintiff the VP role in an attempt to retain Plaintiff Lyon did not respond. Defendant's Response to PSAF at ¶¶ 273. Lyon testified that he lacked the authority to promote at any time: promotions were made twice a year in the April/May and November/December timeframes in line with the Executive Leadership Team

---

[3] "On November 23, 2021, Mr. Mullen and Ms. Dorry met with Ms. Jessen to 'share [] the toolkit around what [Ms. Jessen] need[ed] to do this year to aspire for a promotion. . . . Sophia shared the new Tool Kit for people leaders. She acknowledged that they did not have this last year[.]" PRSUMF at ¶¶ 76-77.

5

meetings. SUMF at ¶28; Defendant's Response to PSAF at ¶ 271. Plaintiff contends Lyons' silence is evidence of his decision never to promote her. PSAF at ¶ 267.

## III. DISCUSSION

### A. Motion to Strike

As a threshold matter, the Court must resolve Defendant's Motion to Strike because its outcome impacts whether Plaintiff's Response to Defendant's Statement of Undisputed Material Facts will be considered for the purposes of the Motion for Summary Judgment.

Motions to strike are "disfavored," and "usually will be denied unless the allegations have *no possible relation* to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Ware Indus. v. St. Paul Fire & Marine Ins. Co.*, No. 18-13895, 2019 WL 1470129 at *2 (D.N.J. Apr. 3, 2019) (emphasis added). Defendant specifically asks the Court to strike Plaintiff's response to its SUMF for the following reasons.

First, Defendant asserts that Plaintiff is importing impermissible argumentation in her response to various facts. *See* Motion to Strike at 3. Specifically, Defendant points to Plaintiff's assertion of the "sham affidavit" doctrine against Defendant's use of affidavits for two witnesses—Sharon Dorry ("Dorry"), an employee of Defendant that works in their Human Resources department, and Chris Lyon, Senior Vice President and Chief Revenue Officer, who Plaintiff asserts discriminated against her—as improper legal argument, and notes that Plaintiff does not cite to record evidence to demonstrate that the affidavits are in fact contradictory to either witnesses' testimony in this case. *Id.* at 4. Further, Defendant also argues that Plaintiff's Statement of Additional Facts Precluding Summary Judgment, ("PSAF"), is rife with inadmissible hearsay and believes that Plaintiff's responses bring in "immaterial 'additional' facts" and are repeatedly

6

"non-responsive," pointing to PSAF that includes 319 additional paragraphs. *Id.* at 5. The Court will address each issue in turn.

The sham affidavit doctrine provides, "a party may not create a [genuine] issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 251 (3d Cir. 2007) (quotation marks omitted). The Third Circuit has a flexible approach to the doctrine, noting that "not all contradictory affidavits are necessarily shams" and where "there is independent evidence in the record to bolster an otherwise questionable affidavit, courts generally have refused to disregard the affidavit." *Id.* at 254.

In large part, the Court notes that Plaintiff asserts the sham affidavit doctrine regarding background information about Model N, (e.g. such as the type of organizations it seeks out as customers, PRSUMF at ¶2, and describing Mr. Lyon's duties as a CRO, (PRSUMF at ¶11). Pursuant to Federal Rule of Civil Procedure 56(c)(1)(B)(4), a party may file an affidavit in support of, or in opposition to, a motion for summary judgment if it is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated." *See also* L. Civ. R. 7.2(a) ("Affidavits . . . shall be restricted to statements of fact within the personal knowledge of the signatory.") Defendant's affidavits satisfy these standards, as Mr. Lyon's and Ms. Dorry's affidavits generally pertain to their roles at Defendant and their knowledge of subordinate employees. *See* Mot. for Summary Judgment, Exs. A & B, (ECF No. 52). The Court also notes that Plaintiff does not specify what aspects of these affidavits are contradictory in comparison to the deposition of these two witnesses and does not see any glaring contradictions of the kind that would obligate it to disregard the affidavit pursuant to the Third Circuit's flexible standard. However, even if the Court struck

7

Plaintiff's sham affidavit arguments, such a result would be inconsequential because striking those specific responses would not have any impact on the material facts in dispute.

Next, "the Third Circuit has held repeatedly that 'hearsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present that evidence . . . in a form that would be admissible at trial.'" *Ware Indus.*, 2019 WL 1470129 at *3 (quoting *McCann v. Astrue*, 293 F. App'x 848, 851 (3d Cir. 2008)). The Court notes that, on its face, several of Defendant's hearsay objections to facts presented in Plaintiff's PSAF could be cured through the witness testimony at trial. For example, Angie Yi ("Yi"), Defendant's HR representative was deposed in this matter and will likely be called to testify at trial. The Court finds that in large part Defendants' hearsay arguments are based on credibility determinations and are thus inappropriate at the summary judgment stage. *Swift v. Pandey*, No. 13-650, 2022 WL 1304953 *6 (D.N.J. May 2, 2022). For example, Zbyszsinski testified in her deposition that she talked with Yi about how Plaintiff felt about being promoted to RSD, and the two discussed their frustration about this result and how Zbyszsinski, Plaintiff, and Mullen all had the same responsibilities. PSAF ¶ 164. Defendant countered that any statements attributed to Yi were hearsay, noting that Yi had testified that she did not believe that Mullen and Plaintiff had the same job, and that when Plaintiff asked Yi if Plaintiff's gender played a role in her not being promoted, Yi testified that she told Plaintiff that she "did not believe gender played a role." Defendant's Response to PSAF ¶ 164. However, Yi also testified that she did not get a "clear answer" from Lyon as to why Plaintiff was not promoted and that she was "a little confus[ed]" that Defendant sought certain things from the women employees that were not being commented on in relation to the men. PSAF ¶¶ 53, 167. Lyon also testified that Yi advocated for Plaintiff to be placed into a VP role. Defendant's Response to PSAF ¶ 165. Many of the contested statements Defendant

8

argues are "hearsay" stem from conversation among witnesses and are construed as nothing more than a veiled attempt to reduce the conflicting nature of the various statements that call into question the declarant's credibility. It is axiomatic that, at this stage, credibility determinations must be made by the factfinder, not the Court.

Finally, with regard to immateriality, the Court "need not comb over every individual statement made in the counterstatement for materiality." *Ware Indus.*, 2019 WL 1470129 at *3. If any of these statements contain immaterial information, the Court will simply ignore it in reaching its determination with respect to the Motion for Summary Judgment. Thus, the Court will deny Defendant's Motion to Strike.

### B. Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with 'specific facts showing that there is a genuine issue for trial.''" *Id.* (quoting

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). To survive a motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the court views the facts and all reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

### i. **Title VII Claims**[4]

Now, the Court will turn to Plaintiff's Title VII claims for discrimination on the basis of sex and retaliation.

#### 1. **Discrimination based on Sex**[5]

Sex discrimination claims are analyzed under the *McDonnell Douglas* burden-shifting framework, which has three steps: 1) the plaintiff must put forward a prima facie case of sex discrimination by a preponderance of the evidence; 2) if a plaintiff successfully makes such a showing, the burden shifts to the defendant to submit a "legitimate" non-discriminatory reason for its actions; 3) if the defendant provides such a reason, the "inference of discrimination drops" and the burden shifts back to the plaintiff to show that the defendant's reason is "merely a pretext for intentional discrimination." *McDonald v. Ingerman Mgmt. Co.*, No. 17-12787, 2020 U.S. Dist.

---

[4] The Court notes that Plaintiff clarifies that she is only pursuing discrimination on the basis of failure to promote and discriminatory pay, and not pursuing a hostile work environment claim independently. Plaintiff reserved the right to use the work environment as evidence to explain the circumstances surrounding her departure from Defendant and to bolster her discrimination claim. *See* Opp. at 1 n.1, (ECF No. 59).

[5] The NJLAD uses an identical process for analyzing sex discrimination claims brought pursuant to Title VII, and thus the Court will not duplicate its analysis and rely on the *McDonnell Douglas* burden-shifting framework *infra*. *See Decree v. UPS*, No. 7-3674, 2009 WL 3055382 at *14 (D.N.J. Sept. 18, 2009).

LEXIS 176580 at *27 (D.N.J. Sept. 25, 2020). If each side can meet its burdens, summary judgment should not be granted. *Id.*

First, a plaintiff must put forward a prima facie case, which establishes "an inference of discrimination" because the acts, unexplained, are presumed more likely than not based on the consideration of impermissible factors. *Id.* To establish a prima facie case, a plaintiff must show: 1) that she belongs to a protected class, 2) she was qualified for the position, 3) she suffered an adverse employment action, and 4) the circumstances support an inference of unlawful discrimination. *Id.* at *28. In this matter, the parties agree that Plaintiff is part of a protected class, (a woman), but disagree with regards to the other factors.

To start, the Court must analyze whether Plaintiff was qualified for the VP role. Here, there is a factual disagreement between Defendant and Plaintiff about whether Plaintiff was qualified for the VP role. Defendant asserts that Plaintiff did not have enough "leadership experience" to be promoted to the VP role, specifically regarding managing other salespeople. SUMF at ¶¶ 11, 16, 34. However, the Court notes that the qualifications for a VP role were not defined and Defendant only outlined any specific qualifiers for that position a year after Plaintiff made her desire for a promotion known. PRSUMF at ¶¶ 76-77 ("On November 23, 2021, Mr. Mullen and Ms. Dorry met with Ms. Jessen to 'share [] the toolkit around what [Ms. Jessen] need[ed] to do this year to aspire for a promotion.") ("Sophia shared the new Tool Kit for people leaders. She acknowledged that they did not have this last year).

Further, Plaintiff notes that she did have a leadership role that required her to manage salespeople at a previous job, and that she had expertise in this industry such that another VP at Defendant believed she was well suited to the role. PSAF at ¶ 158; SUMF at ¶¶ 25-27. Plaintiff also notes that she was essentially performing a VP role as an RSD, and doing so with "difficult

11

people" and "filter accounts . . . that no one wanted" while contributing to the quota that Mullen had as a VP. PSAF at ¶ 219; 237, 239. Despite these challenges, Plaintiff was considered to be performing "very well as the leader of her team." Defendant's Response PSAF at ¶ 19. At this stage, the Court is required to provide all favorable inferences in favor of the nonmovant, and therefore the Court is satisfied that Plaintiff carried her burden to demonstrate that she was qualified for the position that she desired.

Next, the Court must determine whether Plaintiff experienced an adverse employment action. An employee suffers from an adverse employment action where there is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Prioli v. Cty. of Ocean*, No. 18-256, 2021 WL 4473159 at *4 (quoting *Ford v. Cty. of Hudson*, 729 F. App'x 188, 195 (3d Cir. 2018)). The assignment of additional, burdensome responsibilities can be considered an adverse employment action, particularly when there is no additional pay, or where there is a "dramatic downward shift in skill level or job responsibilities." *Id.* at *5.

Here, Plaintiff asserts two adverse employment actions: disparate pay and failure to promote. First, Plaintiff asserts she was paid less for taking on more responsibility when Defendant promoted her to RSD, not only in relation to other VPs but also in relation to individual contributors. *See* PRSUMF at ¶¶ 57, 61; PSAF at ¶ 239. The additional responsibilities were also more burdensome in comparison to Mullen's assignments, in that she was given the individuals who were less experienced, had "HR issues [and] performance issues" and the "filter accounts [] that no one wanted." PSAF at ¶¶ 237, 239. Furthermore, Plaintiff was paid less than Mullen: in 2021 she was paid a base salary of $180,000; in 2021 Mullen was paid a base salary of $250,000. PR SUMF at ¶¶ 43-44. These acts would satisfy the continuing violation exception because the

12

disparate pay and Plaintiff shouldering additional burdensome responsibilities continued through to her resignation. To demonstrate a continuing violation exception, a plaintiff must demonstrate that at least one act occurred within the filing period and that the allegedly discriminatory conduct is more than the occurrence of isolated or sporadic acts of intentional discrimination, which the Court finds here. *Prioli*, 2021 WL 4473159 at *5.

Second, Plaintiff also argues that Defendant's failure to promote her was a continuing violation. While under most circumstances, failure to promote would be considered a discrete act, the Third Circuit has acknowledged that the failure to promote can be a continuing violation if the circumstances suggest that a plaintiff "did not seek to fill a specific vacancy" but rather a promotion could have been granted at any time. *See Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 844 (3d Cir. 1992); *Cardenas v. Massey*, 269 F.3d 251, 258 (3d Cir. 2001) (*abrogated* on other grounds)); *Henderson v. Pa. State Univ.*, No. 21-872, 2022 WL 838119 at *6 (M.D. Pa. Mar. 21, 2022). While there is some factual dispute as to whether Defendant could, in fact, promote Plaintiff at any time, (*see* Defendant's Response to PSAF ¶ 271), the Court believes there are enough facts to suggest that promoting Plaintiff was a possibility through her resignation given that a HR representative testified that she sought Lyon's approval to offer Plaintiff the promotion in an attempt to retain Plaintiff after she submitted her resignation. PSAF ¶ 272. Further, as the supervisor of all of Defendant's sales teams, Lyon created positions for staff, including Plaintiff's RSD role. *See* SUMF ¶ 11, 31. Thus, the Court finds that there is an inference that Lyon had the capacity to promote Plaintiff through her resignation. Therefore, Plaintiff's failure to promote claim survives summary judgment.

The Court is mindful that Plaintiff's prima facie burden at this stage is not meant to be onerous and must be tailored to fit the circumstances of each type of illegal discrimination.

*Ingerman Mgmt. Co.*, 2020 U.S. Dist. LEXIS 176580 at *28. For example, if people outside of the protected class receive more favorable treatment than a plaintiff under similar circumstances, this would raise an inference of unlawful discrimination, such as male employees receiving more favorable treatment than female employees of the same or higher rank. *Id.* at *28; *Prioli*, 2021 WL 4473159 at *7.

Here, Plaintiff has provided the Court with an array of circumstances to support the inference of discrimination. For example, a woman VP resigned from Defendant in July of 2021, citing to the way women were treated at the company. PSAF at ¶ 104. At least two other female employees testified that during a business call a group of men—the "old boy's club"—were given special t-shirts (that were later given to everyone after an employee told HR about the incident). *Id.* at ¶¶ 93, 95; Defendant's Response to PSAF ¶ 121. There was at least one HR representative who received complaints that there was an "old boys' club" environment and noticed that the organization sought "certain things from the female employees that [were] not being commented on about [with regard to] the male employees." *Id.* at ¶¶ 45-46, 53. The Court finds that Plaintiff has provided sufficient evidence at this stage to support an inference of unlawful discrimination when all of the aforementioned events, taken in the light most favorable to the nonmovant, are considered as a whole.

Next, the Court must consider Defendant's non-discriminatory reason for failing to promote Plaintiff and pay her accordingly. To this end, an employer can satisfy its burden at the second step of the *McDonnell Douglas* framework by introducing evidence which "if taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision." *Gupta v. Siemens Healthineers*, No. 19-3833, 2022 WL 807377 at *7 (D.N.J. Mar. 17, 2022). This is intended to be a "relatively light" burden, as the reason proffered

14

need not be the reason that actually motivated the employer's behavior, rather an employer "merely needs to articulate" a non-discriminatory motive. *Id.* Here, Defendant does provide a non-discriminatory reason for not promoting Plaintiff to the VP position, and that it was because Lyon believed she needed more "leadership experience." SUMF at ¶¶ 16, 35. The burden is not heavy for a defendant at this juncture, and thus, the Court must move to the third step.

Moving to the third step of the *McDonnell Douglas* framework, a plaintiff can defeat summary judgment by "pointing to some evidence, direct or circumstantial, from which a factfinder could reasonably either disbelieve the employer's reasons, or believe that a discriminatory reason was more likely than not a motivating or determinate cause of the employer's action." *Gupta*, 2022 WL 807377 at*7. Further, a plaintiff need not present additional evidence beyond his or her prima facie case to survive summary judgment if there is sufficient evidence for a factfinder to discredit a defendant's proposed legitimate justification. *Id.*

The Court notes first the curious timing of the development of "standards" for promotion to a VP position, developed a year after Plaintiff's push for leadership experience. PRSUMF at ¶¶ 76-77. The Court also notes that there is sufficient testimony beyond Plaintiff's perspective to generate doubt as to the real reason for Plaintiff's inability to obtain a VP position, from both HR representatives and other female employees, who testified that there was an "old boy's club" environment, who noticed disparate requirements between men and women who were being evaluated, and some of whom personally believed that Plaintiff's career was impacted due to her sex. PSAF at ¶¶ 52, 53, 71, 158-161, 164, 167-68. While Lyon denies that Plaintiff's sex played a role in his decision making, Plaintiff has pointed to sufficient evidence illustrating the difference in treatment she experienced from male counterparts to cast doubt on Defendant's proffered reason. The only thing Plaintiff needs to do at this stage to defeat summary judgment is to provide

more than a scintilla of evidence, and when the Court views the facts and all reasonable inferences drawn from the facts in the light most favorable to the nonmoving party, it is clear that here Plaintiff has met her burden. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

Ultimately, Defendant's explanations do not resolve the factual disputes that preclude summary judgment regarding Plaintiff's sex discrimination claim underscoring why summary judgment is rarely appropriate in these types of cases. *Prioli*, 2021 WL 4473159 at *7. A plaintiff providing evidence that calls into question Defendant's intent raises a material issue of fact, which, if genuine, must be resolved by a factfinder and not the Court. *Id.* Therefore, this Court denies summary judgment as to Plaintiff's sex discrimination claim.

### 2. Retaliation

Next, Title VII prohibits an employer from "discriminat[ing] against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII.]" *Hussein v. UPMC Mercy Hosp.*, 466 Fed App'x 108, 111 (3d Cir. 2012) (quoting 42 U.S.C. § 2000e-3(a)). Title VII retaliation claims are also subject to the *McDonnell Douglas* three-part framework. *Charles v. Mott's LLP*, No. 17-2879, 2018 WL 2002794 at *4 (D.N.J. Apr. 30, 2018) (quoting *Anderson v. Boeing Co.*, 694 F. App'x 84, 88 (3d Cir. 2017)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

The *McDonnell Douglass* framework requires a plaintiff to first establish a *prima facie* case of retaliation by showing that she (1) engaged in a protected employee activity; (2) suffered an adverse action (either contemporaneous or after the protected activity); and (3) that there is a

causal connection between the employee's protected activity and the employer's adverse action. *Canada v. Samuel Grossi & Sons, Inc.*, 49 F4th 340, 346 (3d Cir. 2022). Next, if the employee can establish a *prima facie* case, the employer then has the burden of producing evidence that "present[s] a legitimate, non-retaliatory reason for having taken the adverse action." *Id*. Finally, if the employer carries this burden, the employee is then responsible for demonstrating that "the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id*.

The anti-retaliation provisions of Title VII cover a range of activities that could be considered "protected," not just submitting a claim to a governing body:

> there is no hard and fast rule as to whether the conduct in a given case is protected. Instead . . . [the courts] evaluate the facts of each case in light of the statutory language and legislative intent. Thus informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support for co-workers who have filed formal charges constitute opposition under the statute.

*Gibbs v. Brennan*, No. 18-14410, 2021 WL 3661277 at *13 (D.N.J. Aug. 18, 2021) (internal citations and quotations omitted). A general complaint of unfair treatment is insufficient to establish protected activity, a complaint must be specific enough to notify management of the particular type of discrimination at issue, at least through the context of the statement and to the overall "message being conveyed rather than the means of conveyance." *Id*. at *14. A plaintiff does not need to mention Title VII in order to be protected by its provisions; in other words, the law does not require the use of legal magic words, so long as the employer can glean that the employee is opposing discrimination. *Id*.

Here, Plaintiff conveyed to several HR employees that she felt her career was not advancing because she was a woman. Defendant's Response to PSAF ¶¶ 227, 229, 237-39, 243,

17

245, 247, 274. Plaintiff also shared her concern that "sales is happy to have women at lower levels and leadership doesn't value women," was shared with several other HR representatives. *Id.* at ¶¶ 239, 242, 245. Moreover, when Plaintiff was specifically asked by an HR representative if she "fe[lt] like she [was] being treated differently than a man at Model N," Plaintiff responded "yes." *Id.* at ¶ 238. These kinds of informal complaints are encompassed within the ambit of Title VII.[6] Thus, the Court finds that Plaintiff meets her burden that she engaged in a protected activity.

Next, retaliation claims have a "broader definition of adverse action, extend[ing] beyond workplace-related or employment-related retaliatory acts and harm," where "the plaintiff must show a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Prioli*, 2021 WL 4473159 at *9. Generally, petty slights, minor annoyances, and simple lack of manners will not be sufficient; an act must be serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment. *Id.*

Here, Plaintiff repeatedly asserted to HR that she believed she was being retaliated against pointing to two incidents where she received lower pay on deals after she complained about being denied a promotion based on her sex as well as that she was being paid less for performing VP level work. SUMF at ¶¶ 52-54; PSAF at ¶¶ 233-235, 237, 239. Plaintiff has also brought forth evidence that pay disparity existed for another female VP that was only corrected after that employee complained to HR. PSAF at ¶¶ 97, 102.

Further, after Plaintiff's yearlong efforts to be promoted, Mullen told Plaintiff that she would not be promoted that next year and that her quota would, in fact, increase, making it even

---

[6] While it is true that Dorry did not interpret Plaintiff's complaints to be that of sex discrimination, (*see* Defendant's Response to PSAF at ¶ 254), Defendant's disputes of fact do not negate Plaintiff's prima facie case and further demonstrates a dispute of fact that must be determined by a jury.

more difficult to achieve the "successful sales team" that Defendant allegedly sought. PSAF at ¶¶ 229, 232, 235, 267; PRSUMF at ¶¶ 76-77. Such a failure to promote is widely considered a materially adverse event in a way that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Edmond v. Plainfield Bd. Of Educ.*, 171 F. Supp. 3d 293, 311 (D.N.J. 2016). Finding that Plaintiff endured materially adverse events, the Court now turns to the question of causality.

Next, a plaintiff "may show causation in many ways, two are particularly significant: (1) timing, and (2) a pattern of antagonism." *Dorvil v. Burlington Coat Factory Warehouse Corp.*, No. 9-5778, 2011 WL 4899976 at *5 (D.N.J. Oct. 14, 2011). Here, Plaintiff describes how, after discussing her intention to pursue a leadership role at Model N, her job became harder: after being promoted to RSD, she was supervising employees who were less experienced, had "HR issues [and] performance issues," and that the "territories" were divided unevenly between her and Mullen such that Plaintiff had to manage the "filter accounts [] that no one wanted," with all the "grunt work." PSAF at ¶ 216, 237, 239. Plaintiff also described that the more she contacted HR, the more "uncomfortable" her meetings around forecast calls became. *Id.* at ¶ 235. Plaintiff was excluded from meetings regarding her accounts, having to traverse a "gauntlet" during her reviews, and her pay for a deal was cut soon after she started approaching HR with her complaints. *Id.* at ¶¶ 233-35. Finally, at the end of her first year as RSD, Mullen informed Plaintiff that despite her efforts with her team and territory, she would not be getting the promotion to VP and her quota would increase, making it even more difficult to create the "high performing sales team" that Defendant decided she needed to have before being promoted. *Id.* at ¶¶ 229, 232, 235, 237, 239, 267. While the timing of these individual events is not conclusive to the issue of causation, coupled with the pattern of increasingly negative experiences following her meetings with HR and her

supervisors demonstrates sufficient antagonism to satisfy the low threshold of establishing causation. *Morrissey v. Luzerne County Cmty. College*, 117 Fed. App'x 809, 816 (3d Cir. 2004). Therefore, Plaintiff has pointed to sufficient facts to establish a prima facie case.

Moving to the second stage of the *McDonell Douglas* framework, Defendant must rebut the presumption of retaliation with a nondiscriminatory reason for its action. *Dorvil v. Burlington Coat Factory Warehouse Corp.*, No. 9-5778, 2011 WL 4899976 at *5. As discussed *supra*, Defendant asserts that it did not promote Plaintiff to the VP position, and that it was because Lyon believed she needed more "leadership experience," (SUMF at ¶¶ 16, 35), which is a sufficient to shift the burden back to Plaintiff for the third step of the *McDonnell Douglass* framework.

At the third step, a plaintiff must show pretext by either identifying evidence that undermines the credibility of the employer's proffered reasons or evidence of retaliatory animus. *Id.* The Court notes that, as discussed *supra*, Plaintiff has submitted sufficient evidence to create doubt as to the "real" reason she was prevented from advancing at Defendant, leading her to quit. PSAF at ¶¶ 52, 53, 71, 158-161, 164, 167-68. Thus, the Court is satisfied that Plaintiff's retaliation claim must also survive summary judgment.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment, (ECF No. 52) and Motion to Strike, (ECF No. 69), are **DENIED**.

_____
KAREN M. WILLIAMS, U.S.D.J.